838 So.2d 1090 (2002)
Wydell Jody EVANS, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-468.
Supreme Court of Florida.
November 14, 2002.
Rehearing Denied February 26, 2003.
*1092 James B. Gibson, Public Defender, and Michael S. Becker, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
We have on appeal a judgment of conviction of first-degree murder, kidnaping, and aggravated assault. Appellant was sentenced to death for the first-degree murder conviction and received concurrent sentences of life imprisonment and 108.15 months for the kidnaping and aggravated assault convictions, respectively. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

I. FACTS
On October 21, 1998, two days after being released from prison, Wydell Evans shot and killed his brother's seventeen-year-old girlfriend, Angel Johnson, during an argument over her alleged unfaithfulness to Evans' brother. At the time of the shooting, Evans was in an automobile with Johnson, Erica Foster, Sammy Hogan, and Lino Odenat. At some point during the argument, Johnson laughed, to which Evans responded, "You think it's funny? You think it's funny?" Evans then pulled out a gun and shot Johnson in the chest.
After the shooting, Evans directed Hogan to drive to the home of a man called "Big Dick." As they drove, Evans passed the gun to Odenat and told him to dispose of it. When they arrived at Big Dick's house, Evans left the car and talked to Big Dick. While Evans was talking, Odenat decided to get out of the car and let the others take Johnson to the hospital. As Odenat opened the door and stepped out, Evans told him to get back into the car and Odenat obeyed. Within a few minutes, Evans returned and directed Hogan to drive into a nearby parking lot. There, Evans threatened Foster and Hogan not to tell who shot Johnson or he would kill *1093 them and their families. After threatening Foster and Hogan, Evans tried to wipe his fingerprints from inside the car and left with Odenat. Once Evans was out of the car, Foster and Hogan rushed Johnson to the hospital where she later died of her wounds.
At the hospital, Foster and Hogan were questioned by the police, at which time they first told police that a white man driving a cream-colored car shot Johnson over a drug deal. They later changed their story and reluctantly identified Evans as the shooter. The police found Evans at a motel the next morning. He was taken into custody, charged, and after a jury trial, convicted of one count of first-degree premeditated murder, one count of kidnaping, and one count of aggravated assault.
The trial judge followed the jury's recommendation of a sentence of death, finding two aggravating circumstances and several nonstatutory mitigating circumstances. The court imposed concurrent sentences of life imprisonment on the kidnaping count and 108.15 months with a three-year mandatory minimum term on the aggravated assault count. Evans raises six issues on appeal.

I. GUILT PHASE

A. Hearsay
Evans first argues that the trial court erroneously permitted the introduction of hearsay testimony. During its case in chief, the state called two police officers who each testified that Hogan and Foster identified Evans as the person who shot Johnson. Over defense counsel's objection, the trial court allowed the testimony on the grounds that Hogan and Foster's statements constituted excited utterances.[1] We agree with Evans that the statements were not admissible as excited utterances.
An excited utterance is defined as a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (1999). To qualify for this exception, (1) the declarant must have experienced or witnessed an event startling enough to cause nervous excitement; (2) the statement must have been made while under the stress of excitement caused by the startling event; and (3) the statement must have been made before there was time to contrive or misrepresent. See Stoll v. State, 762 So.2d 870, 873 (Fla. 2000).
The statements at issue do not qualify under the excited utterance exception to the hearsay rule. While Hogan and Foster had experienced several events startling enough to cause nervous excitement and their statements identifying Evans may have been made while they were still under the stress of excitement caused by those events, their statements clearly were not made before they had time to contrive or misrepresent. A significant amount of time elapsed between the startling events and the statements. More importantly, both Hogan and Foster lied to the police officers who initially questioned them, telling the officers that Johnson was shot by a white man driving a cream-colored car. Only after new officers arrived and questioned Hogan and Foster separately did they identify Evans as the person who shot Johnson. Because Hogan and Foster's statements identifying Evans were made some time after the startling events and after they had contrived a false *1094 story, they cannot qualify as excited utterances and should not have been admitted under that hearsay exception.
Although the statements do not qualify under the excited utterance exception to the hearsay rule, their admission was not error because under section 90.801, Florida Statutes (1999), a statement is not hearsay "if the declarant testifies at the trial ... and is subject to cross-examination concerning the statement and the statement is ... [o]ne of identification of a person made after perceiving the person." § 90.801(2)(c), Fla. Stat. (1999). Here, both Hogan and Foster testified at trial and were subject to cross-examination concerning their identification of Evans as the shooter.

B. Prosecutorial Comments
Evans next argues that the trial judge erred in denying his motion for a mistrial based on comments made by the prosecutor in her closing argument. Evans' defense and his testimony at trial centered around his assertion that the murder weapon discharged accidentally. Evans also testified that although the shooting was an accident, he did not immediately go to the police because he was scared and paranoid, but that he planned to call the police the next morning to explain what had happened. These themes were repeated in defense counsel's closing argument.
In her rebuttal argument, the prosecutor made several comments directed to Evans' defense, making the point that if the shooting was really an accident as Evans claimed, he would not have disposed of the gun and would have immediately gone to the police and explained the circumstances. The prosecutor further suggested that had Evans not disposed of the gun, it could have been tested to determine whether, in fact, it had a slight trigger pull or was prone to misfire or fire accidentally. She suggested that because Evans knew that the gun did not malfunction or fire accidentally, he disposed of it, and as a result, the State was unable to confirm these facts. Defense counsel objected to these comments[2] and moved for a mistrial. The motion was denied. On appeal, Evans argues that the trial court abused its discretion in denying the motion. He contends that the prosecutor's insinuation that he disposed of the gun was not supported by the evidence and that the comments at issue improperly shifted the burden of proof to the defendant to prove his innocence. We disagree.
Normally, "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." Jackson v. State, 575 So.2d 181, 188 (Fla. 1991). However, a prosecuting attorney may comment on the jury's duty to analyze and evaluate the evidence and state his or her contention relative to what conclusions may be drawn from the evidence. See Ruiz v. State, 743 So.2d 1, 4 (Fla.1999). In this instance, Erica Foster, who was in the car when the shooting occurred, testified that after Evans shot Johnson, he gave the gun to Lino Odenat and told him to dispose *1095 of it. She further testified that once Evans and Odenat exited, the gun was no longer present in the car. From this evidence, the prosecutor was entitled to argue that the jury could and should conclude that Evans was responsible for disposing of the gun.
We further reject Evans' argument that the prosecutor's comments improperly shifted the burden of proof. Evans took the stand in his own defense, and by doing so, he placed his credibility at issue. Accordingly, the prosecution was entitled to highlight inconsistencies between Evans' testimony and other evidence in the case and to expose contradictions and improbabilities in Evans' version of events. The clear import of the challenged comment was to discredit Evans' testimony by pointing out that his actions in disposing of the gun were inconsistent with his claim that the shooting was an accident. This was fair comment on the evidence, and we find no error.

C. Denial of Motion for Acquittal
Evans raises as his third issue his assertion that the trial court erred in denying his motion for judgment of acquittal. As to the murder charge, Evans argues that the State did not sufficiently establish premeditation. This Court has defined premeditation as a "fully formed conscious purpose to kill" which may be "formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." Woods v. State, 733 So.2d 980, 985 (Fla.1999). Premeditation can be inferred from the surrounding circumstances, including "the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Holton v. State, 573 So.2d 284, 289 (Fla. 1990).
Viewing the evidence in the light most favorable to the State, there is competent, substantial evidence to support a finding of premeditation. Edward Rogers, Evans' former prison-mate, testified that while he and Evans were incarcerated, he overheard part of a telephone conversation in which Evans was arguing with Angel Johnson. When Evans hung up the phone, he told Rogers that if he could get his hands on Johnson, he was going to kill her. Within hours after his release from prison, Evans discussed with several people his belief that Johnson was cheating on his brother and stated that he was going to "take care of his brother's work" for him. There was also evidence that on the evening of the shooting, Evans was looking for Johnson. Once Johnson was in the car, Evans confronted her regarding the allegations that she was cheating on his brother. When she denied the allegations and smiled and laughed, he pulled out the gun, aimed it at her chest, and fired. These facts are sufficient to support premeditated murder. Accordingly, the trial judge was correct in submitting this issue to the jury.
Evans next asserts that he was entitled to a judgment of acquittal on the murder charge because the State did not prove that Johnson's death occurred because of a criminal act; instead, he asserts that it was an accident caused when Johnson tried to push the gun away. Although Evans testified to this version of events, Foster and Hogan disputed his testimony, stating that Johnson never touched the gun and had her hands up in the air when the gun was fired. Additionally, the testimony of the medical examiner regarding the physical evidence cast serious doubts upon Evans' version of events. Accordingly, while the evidence was conflicting, there was sufficient evidence to support *1096 the jury finding; therefore, the trial judge was correct in denying Evans' motion for judgment of acquittal.
Evans also asserts that there was insufficient evidence to support his conviction for kidnaping. Again, we disagree. Evans was charged and convicted of only one count of kidnaping either Angel Johnson, Erica Foster, or Sammy Hogan.[3] Viewing the evidence in a light most favorable to the State, we hold that there was sufficient evidence for the jury to find that Evans kidnaped any one of the three victims. Although initially all three were voluntarily in the car with Evans, there was sufficient evidence that once the shooting took place, the victims no longer willingly accompanied Evans to the various locations to which he directed he be taken and that he confined them against their will either by force or threat with the intent to terrorize them. Accordingly, the trial court did not err in denying Evans' motion for judgment of acquittal on the kidnaping charge.

D. Jury Instructions
Evans argues that the trial court erred in its kidnaping instruction. Although Evans was charged with kidnaping under two theories, (1) kidnaping with the intent to terrorize and (2) kidnaping with the intent to facilitate the commission of another felony, the jury was instructed only as to kidnaping with the intent to terrorize. Evans argues that the instructions given by the court improperly combined the two theories of kidnaping and, in doing so, eliminated an essential element of the crime. Because Evans failed to object to the jury instructions, this Court will review this claim only if the instructions amount to a fundamental error. See State v. Wilson, 686 So.2d 569, 570 (Fla.1996).
Although the instruction as given commingles the elements of kidnaping with the intent to terrorize and kidnaping with the intent to facilitate a felony,[4] it does not amount to fundamental error in that it contains all of the essential elements of kidnaping with the intent to terrorize, which was the sole theory of kidnaping submitted to the jury. The fact that the instruction contained additional elements of proof benefitted the defendant by making it more difficult to prove the kidnaping charge.

II. PENALTY PHASE

A. Presentence Investigation Reports
During the penalty phase, the trial court permitted the State to introduce, *1097 over defense counsel's objections, portions of several presentence investigation reports from Evans' prior convictions. The reports were introduced for the purpose of proving the details of the prior violent felonies of which Evans had been convicted. Pursuant to section 921.141(1), Florida Statutes (1999), hearsay testimony is admissible to establish these details, provided the defendant has a fair opportunity to rebut the hearsay. See § 921.141(1), Fla. Stat. (1999) (during the penalty phase of a capital case, "[a]ny such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements").
Here, Evans argues that he was not afforded a fair opportunity to rebut the hearsay statements contained in the presentence investigation reports and that their admission denied his Sixth Amendment confrontation right because he was unable to cross-examine the person who prepared them.[5] We disagree. The transcripts of the prior trials were available to rebut any inaccuracies in the reports. The reports themselves contained Evans' statements regarding the crimes and also included victim impact information which was favorable to the defense. The trial court agreed to allow Evans to place that information before the jury, but he elected not to do so. Further, while as described above there were other ways Evans could have rebutted the statements contained in the reports, Evans voluntarily took the stand during the penalty phase and gave his version of the facts underlying the previous violent felony convictions. Under the circumstances of this case, the admission of the presentence investigation reports was not an abuse of discretion. Accordingly, we deny relief on this ground.

B. Proportionality
Evans finally raises the issue of whether the sentence of death is proportional. The trial judge in this case found that two statutory aggravators were proven beyond a reasonable doubt: (1) the existence of prior violent felonies; and (2) that the current crime was committed while Evans was on probation. The judge rejected the statutory mitigator that the victim was a participant in the defendant's conduct, finding that although there was some testimony that the victim had slapped the gun away causing it to misfire, this testimony was rendered implausible by the testimony of the medical examiner and the location of the bullet in the car.
The judge also found that several nonstatutory mitigators were proven: (1) Evans had an abused or deprived childhood as a result of his mother's crack addiction (little weight); (2) he contributed to society as evidenced by his exemplary work habits (little weight); (3) he performed charitable or humanitarian deeds (some weight); (4) he counseled youth to avoid crime and stay in school (little weight); and (5) he had good behavior in prison (little weight). The trial court rejected the mitigator of remorse, finding it was not proven. After concluding that the aggravators far outweighed the mitigators, the judge agreed with the jury's recommendation and sentenced the defendant to death.
In reviewing the proportionality of death sentences, this Court does not simply *1098 compare the number of aggravators to the number of mitigators. See Connor v. State, 803 So.2d 598, 612 (Fla.2001). Instead, we must ensure uniformity in the death penalty by reviewing all the circumstances in the present case relative to other capital cases. See Bryant v. State, 785 So.2d 422, 436 (Fla.2001).
Upon review, we find that the imposition of the death penalty in this case is proportionately warranted. While the evidence reveals a close, almost familial type of relationship between Evans and Johnson, this factor alone does not render Evans' death sentence disproportionate. As we explained in Spencer v. State, 691 So.2d 1062 (Fla.1996), "this Court has never approved a `domestic dispute' exception to imposition of the death penalty." Id. at 1065; see also Blackwood v. State, 777 So.2d 399, 412 (Fla.2000); Zakrzewski v. State, 717 So.2d 488, 493 (Fla. 1998).[6] In some murders that result from domestic disputes, we have determined that the cold, calculated, and premeditated aggravating circumstance (CCP) was erroneously found because the heated passions involved were antithetical to "cold" deliberation. See Santos v. State, 591 So.2d 160, 162-63 (Fla.1991) (concluding that the CCP aggravator was not applicable where the defendant was involved in an ongoing, highly emotional domestic dispute with victim and her family, even though he had acquired a gun in advance and made previous death threats against victim; concluding that murder was not "cold" even though it may have appeared to be calculated); Douglas v. State, 575 So.2d 165, 167 (Fla.1991) (same as to killing that arose from a domestic dispute associated with a lover's triangle). "However, we have only reversed the death penalty if the striking of the CCP aggravator results in the death sentence being disproportionate." Spencer, 691 So.2d at 1065. Instead, our proportionality analysis properly "focuses on whether death is a proportionate penalty after considering the totality of the circumstances in a particular case." Blackwood, 777 So.2d at 412.
In the instant case, Johnson was Evans' brother's long-time girlfriend, and Evans was very concerned about rumors that Johnson was being unfaithful while his brother was incarcerated. When Evans confronted Johnson about the rumors while they were riding in the same car, an argument ensued between them. When Johnson made a comment and laughed, Evans responded by pulling out a gun and shooting Johnson in the chest. While the shooting occurred during an argument, Evans made prior statements that he intended to kill Johnson for cheating on his brother. Two days after he was released from jail, Evans made good on this threat by shooting the victim point blank in the chest. He refused to let other individuals who were present during the shooting take Johnson to the hospital. These individuals testified that the victim was gasping for breath and pleading for help. The victim died shortly after reaching the hospital, having bled to death from the gunshot wound that severed her aorta. Further, Evans was previously convicted of three violent felonies: aggravated battery for leading a brutal attack on a motorist, and battery on law enforcement officers on two separate occasions. He committed the murder of Johnson while serving felony probation on two separate cases. In addition, the applicable mitigating factors did not involve the circumstances of the murder *1099 itself. See, e.g., Ross v. State, 474 So.2d 1170, 1174 (Fla.1985) (concluding that trial court erred in not considering the circumstances of the murder to be a "significant mitigating factor," including that the defendant had been drinking when he attacked the victim, that he had a drinking problem, and that the killing was the result of an angry domestic dispute in which victim realized that defendant was having difficulty controlling his emotions).
When the circumstances of the instant case are compared to similar cases, we conclude that the death penalty is proportionate here. See, e.g., Blackwood v. State, 777 So.2d 399, 412 (Fla.2000) (finding death sentence proportional where defendant had been involved in relationship with the victim several months before the murder and sole aggravating circumstance of heinous, atrocious, or cruel outweighed statutory mitigator of no significant history of prior criminal conduct and eight nonstatutory mitigators).
For the reasons stated above, we affirm Evans' convictions and death sentence.
It is so ordered.
WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, C.J., and PARIENTE, J., concur.
SHAW, J., concurring in part and dissenting in part.
While I concur in the majority's decision to affirm Evans' convictions, I find that imposition of the death penalty in this case is disproportionate and not in accord with previous decisions of this Court. The homicide committed by Evans occurred during an argument between Evans and the victim over her alleged unfaithfulness to his brother. The victim made the fatal mistake of laughing which incensed Evans to the point that he pulled out a gun and shot her in the chest. There is nothing in the record to show that this was a planned or premeditated killing. In fact, the record reflects that the shooting was a spontaneous response to what Evans obviously felt was inappropriate laughter.
Although this Court has never approved a "domestic dispute" exception to the application of the death penalty, in other cases involving circumstances similar to those presented here, we have held that the death penalty was disproportionate. See Farinas v. State, 569 So.2d 425 (Fla. 1990) (vacating death sentence where defendant shot his former girlfriend three times, first paralyzing her as she ran from him and then shooting her twice in the head, where murder was HAC and murder was committed during a kidnapping but there was mitigating evidence that defendant was under the influence of extreme mental or emotional disturbance due to intense jealousy); Wilson v. State, 493 So.2d 1019 (Fla.1986) (vacating death sentence of defendant convicted of killing father in heated confrontation, where there were two valid aggravating circumstances (the murder was HAC and defendant had been convicted of a prior violent felony) and no mitigating circumstances); Ross v. State, 474 So.2d 1170 (Fla.1985) (vacating death sentence of defendant convicted of killing wife where killing was HAC but was mitigated by fact that defendant had been drinking and fact that killing occurred during angry domestic dispute); Blair v. State, 406 So.2d 1103 (Fla.1981) (vacating death sentence of defendant convicted of killing wife in response to her threat to go to police about relationship between defendant and her daughter, where there was one valid aggravating circumstance (murder committed to avoid or prevent lawful arrest) and one mitigating circumstance (no significant history of prior criminal activity)). I believe that this result is further supported by the fact *1100 that there was no finding of either the cold, calculated, and premeditated aggravator or the heinous, atrocious, or cruel aggravator[7] and that the trial court found five nonstatutory mitigators.
The majority opinion ignores the above precedent based on the statement in Spencer v. State, 691 So.2d 1062, 1065 (Fla.1996), that "this Court has never approved a `domestic dispute' exception to imposition of the death penalty." Id. (emphasis added). As Spencer explicitly recognized, it did not change the law. Instead, domestic situations are and always have been "evaluated in the same manner as other cases for determination as to whether a death sentence may be disproportional given the overall circumstances." Butler v. State, 27 Fla. L. Weekly S461, S466 (Fla. May 9, 2002). The mere fact that these cases involved family members or friends is of no moment. They stand for the proposition that when a heated argument leads to a killing that was most likely upon reflection of a short duration, this Court will treat this as an important mitigating circumstance which must be weighed against the aggravating factors. Since I do not believe that the facts of this case demonstrate that it is one of the most aggravated and the least mitigated of first-degree murders, accordingly, I dissent. I would affirm the conviction but would vacate the death sentence and remand for imposition of a life sentence.
ANSTEAD, C.J., and PARIENTE, J., concur.
NOTES
[1] Contrary to the State's contention, we find that although defense counsel's objection on one occasion came after the witness had already begun to answer the question, it was sufficient to preserve the issue for appeal.
[2] The State urges that because defense counsel objected to this line of argument only after the prosecutor brought it up a second time, Evans' objections to the earlier portion of the prosecutor's comments were not preserved for appeal. We disagree. On the record, defense counsel's objection covered both portions of the prosecutor's arguments, sufficiently placed the trial judge on notice that an error may have occurred, and provided an opportunity to correct the error; thus, the objection was sufficient to preserve the issue for appeal.
[3] The indictment charged in a single count that "WYDELL JODY EVANS, did forcibly, secretly or by threat, confine, abduct or imprison another person, ANGEL JOHNSON, ERICA FOSTER, SAMMY HOGAN." Evans does not allege any error in the charging document.
[4] The trial court instructed the jury as follows:

Before you can find the Defendant guilty of kidnapping, the State must prove the following three elements beyond a reasonable doubt:
Number one: Wydell Jody Evans forcibly, secretly, or by threat confined, abducted, or imprisoned Angel Johnson, Erica Foster, or Sammy Hogan against their will.
Number two: Wydell Jody Evans had no lawful authority.
Number three: Wydell Jody Evans acted with the intent to inflict bodily harm upon or to terrorize the victim or another person.
In order to be kidnaping the confinement, abduction or imprisonment:
A: Must not be slight, inconsequential or merely incidental to the felony;
B: Must not be of the kind inherent in the nature of the felony; and
C: Must have some significance independent of the felony in that it makes the felony substantially easier of commission or substantially lessens the risk of detection.
[5] The State contends that this claim is procedurally barred because Evans asserted below only that the reports should not be admitted because they constitute hearsay. We disagree. Although Evans' counsel did not specifically assert a Sixth Amendment challenge, the hearsay objection raised is closely related to the right of confrontation. Hence, we will review this issue on the merits.
[6] To the extent that the proportionality analysis in Blakely v. State, 561 So.2d 560 (Fla. 1990), and Wilson v. State, 493 So.2d 1019 (Fla.1986), rests on a "domestic dispute exception to imposition of the death penalty" that this Court has disavowed in Spencer and subsequent cases, we recede from Blakely and Wilson.
[7] See Larkins v. State, 739 So.2d 90, 95 (Fla. 1999) (holding that CCP and HAC "are two of the most serious aggravators set out in the statutory sentencing scheme, and, while their absence is not controlling, it is also not without some relevance to a proportionality analysis").