# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**RICHARD BENNETT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-2925

[November 30, 2022]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Robert Panse, Judge; L.T. Case No. 50-2020-CT-009632-AXXX-MB.

Carey Haughwout, Public Defender, and Mara C. Herbert, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessica L. Underwood, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Richard Bennett appeals an adjudication of guilt for misdemeanor driving under the influence of controlled substances. He argues, among other issues, that the trial court violated his Sixth Amendment Confrontation Clause right by admitting his urinalysis toxicology report where the author of the report did not testify at trial. We agree that this was error, but we must affirm because the issue was not preserved for review. We nevertheless write to impress that, under most circumstances, such forensic reports are inadmissible without the author's testimony. As to all other issues raised, we affirm without discussion.

On the night of his arrest, Bennett's breath test results were negative for alcohol. He consented to a urine test, and his toxicology report revealed the presence of controlled substances.

Dr. Xiaoqin Shan, a senior forensic scientist with the Palm Beach County Sheriff's Office, testified for the state at trial. Dr. Shan explained the standard operating procedures for the crime lab for testing urine

toxicology, which include the use of several instruments to confirm the presence of drugs.

Dr. Shan explained that two toxicologists are involved in each toxicology report that is prepared. The first toxicologist takes an inventory of the evidence, ensures it is properly sealed and labeled, performs screening tests to see what classes or kinds of drugs are present in the specimen, compiles the analytical data, makes a list of the findings, and prepares a toxicology report. The second toxicologist, called the reviewer, reviews the entire toxicology file that was generated by the first toxicologist, ensures that all quality control procedures and standard operating procedures were followed and all quality control criteria are met, and ensures that all the conclusions and the results of the report reflect the analysis results. If no errors are found, the report is issued.

In this case, Russell Miller, a senior forensic scientist, acted as the first toxicologist who performed the testing and prepared the report, and Dr. Shan acted as the reviewer. Miller signed the toxicology report that listed the controlled substances detected in the sample. Dr. Shan signed a "TX Toxicology Review Form" attached to the report. As of the time of trial, Miller was no longer a senior forensic scientist with PBSO, although the record does not reflect why. Dr. Shan confirmed that, with respect to the report of Bennett's toxicology testing, she ensured all quality control procedures were followed, reviewed all of the data, and reached the same conclusions which Miller documented in the report. When asked if she authored the report, Dr. Shan stated, "I reviewed the report and therefore I'm part of the authorizing of the report," but she acknowledged that she did not physically sign the same page as Miller.

Bennett objected to the admission of the toxicology report on the basis of hearsay, explaining that it was authored by a different toxicologist who did not testify. The trial court overruled the objections based on Dr. Shan's review, analysis, and conclusions.

The jury found Bennett guilty.

On appeal, Bennett challenges the admission of the toxicology report, which he contends was testimonial hearsay. He argues that his Sixth Amendment right to confrontation was violated when the trial court allowed the admission of the report through the testimony of Dr. Shan, when Miller, who did not testify at trial, conducted the tests, analyzed the data, and authored the actual toxicology report.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Amend. VI, U.S. Const. In *Crawford v. Washington*, 541 U.S. 36 (2004), "the Supreme Court held that the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant." *Brown v. State*, 69 So. 3d 316, 318 (Fla. 4th DCA 2011).

The class of testimonial statements covered by the Confrontation Clause was initially described by the Supreme Court as follows:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . .

*Crawford*, 541 U.S. at 51-52 (alteration in original) (citations and quotation marks omitted). The Court later clarified:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006).

More specifically, courts have found that forensic lab reports can constitute testimonial hearsay: "[L]ab reports and similar materials, when prepared for criminal trials, [are] testimonial statements and . . . their admission without the preparer's testimony runs afoul of *Crawford* and the Confrontation Clause." *State v. Johnson*, 982 So. 2d 672, 680 (Fla.

3

2008) (trial court erred by admitting lab report establishing illegal nature of substances under business record exception where preparer did not testify and report "was clearly prepared in anticipation of trial and meant to establish an element of the crime"). This conclusion has been applied in cases involving various types of forensic reports. *See, e.g., Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011) ("report of blood alcohol analysis" following test of defendant's drawn blood was testimonial); *State v. Belvin*, 986 So. 2d 516, 522 (Fla. 2008) ("[a] breath test affidavit fits squarely within the definition of 'testimonial'").

Where the reports are testimonial, their admission violates the Sixth Amendment if the preparer is unavailable and the defendant lacked a prior opportunity to cross-examine the preparer. *See, e.g., Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009) (reversing where trial court admitted three affidavits of non-testifying analysts attesting that substances were cocaine); *Belvin*, 986 So. 2d at 526 (trial court erred by admitting breath test affidavit without the affiant-technician testifying at trial, where state established affiant was unavailable but defendant did not have a prior opportunity to cross-examine her).

The toxicology report at issue in the instant case constitutes a testimonial statement. It was prepared for the prosecution, in the absence of emergent circumstances, is accusatory, tends to prove a material element of the crime (impairment), and is a "pretrial statement[] that [the] declarant[] would reasonably expect to be used prosecutorially." *See Crawford*, 541 U.S. at 51. Consequently, Bennett had a right to confront the person who prepared it. The parties do not dispute that Bennett did not have a meaningful opportunity to cross-examine Miller or that the state did not establish Miller's unavailability.

The state argues that the Confrontation Clause was not implicated because Shan was one of two "analysts" or "authors" who prepared the report, she engaged in an extensive peer review process that involved reviewing all the data and adopting the conclusions as her own, and Bennett was able to meaningfully cross-examine her at trial.

The Supreme Court rejected a similar, though not identical, argument under similar facts in *Bullcoming*. There, in the defendant's trial for driving while intoxicated, the state introduced a forensic lab report certifying that the defendant's blood alcohol concentration was well above the legal limit. 564 U.S. at 651. The state did not call the certifying analyst, Caylor, but rather called "another analyst [Razatos] who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample." *Id.* The Supreme Court

determined that this other analyst's testimony did not satisfy the Sixth Amendment:

> Recognizing that admission of the blood-alcohol analysis depended on "live, in-court testimony [by] a qualified analyst," 147 N.M., at 496, 226 P.3d, at 10, the New Mexico Supreme Court believed that Razatos could substitute for Caylor because Razatos "qualified as an expert witness with respect to the gas chromatograph machine and the SLD's laboratory procedures," *id.*, at 495, 226 P.3d, at 9. But surrogate testimony of the kind Razatos was equipped to give could not convey what Caylor knew or observed about the events his certification concerned, *i.e.*, the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part. Significant here, Razatos had no knowledge of the reason why Caylor had been placed on unpaid leave. With Caylor on the stand, Bullcoming's counsel could have asked questions designed to reveal whether incompetence, evasiveness, or dishonesty accounted for Caylor's removal from his workstation. Notable in this regard, the State never asserted that Caylor was "unavailable"; the prosecution conveyed only that Caylor was on uncompensated leave. Nor did the State assert that Razatos had any "independent opinion" concerning Bullcoming's BAC. . . . In this light, Caylor's live testimony could hardly be typed "a hollow formality[.]"

*Id.* at 661-62 (footnotes omitted) (first alteration in original); *see also Johnson*, 982 So. 2d at 673 (trial court erred by admitting lab test confirming substances possessed were controlled through testimony of tester's supervisor). The Court noted, "[T]he analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" *Bullcoming*, 564 U.S. at 661 (quoting *Melendez–Diaz*, 557 U.S. at 319-20 n.6).

However, subsequent cases established that all is not lost for lab reports prepared by an analyst no longer employed by the state. Following *Bullcoming*, a plurality of the Supreme Court determined in *Williams v. Illinois*, 567 U.S. 50, 57-58 (2012), that testimony concerning a forensic report may be admissible through an expert who did not prepare the report. The Florida Supreme Court summarized *Williams* as follows:

5

In *Williams*, a plurality of the Supreme Court concluded that an expert witness could offer an opinion about a forensic report without ultimately testifying to the underlying truth of that report. 132 S.Ct. at 2227–28. The report itself was prepared by a nontestifying witness, but was not admitted. *Id.* The plurality, written by Justice Alito and joined by Chief Justice Roberts and Justices Kennedy and Breyer, further held that the report itself would not have violated the Confrontation Clause, even if it had been admitted. *Id.* at 2242. The plurality concluded that the report was not testimonial because it was generated at a time when a dangerous, unknown rapist was at large. *Id.* at 2243-44 (citing *Michigan v. Bryant*, 562 U.S. 344, 359–62, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011)). Justice Thomas concurred in the judgment on the basis that the evidence was admissible "solely because [the report] lacked the requisite 'formality and solemnity' to be considered 'testimonial' for the purposes of the Confrontation Clause." *Id.* at 2255 (Thomas, J., concurring in the judgment) (citing *Bryant*, 562 U.S. at 361, 131 S.Ct. 1143).

*Calloway v. State*, 210 So. 3d 1160, 1194 (Fla. 2017) (footnote omitted).

Similarly, in *Smith v. State*, 28 So. 3d 838, 853-55 (Fla. 2009), the Florida Supreme Court rejected an argument that the person who conducted a DNA test had to testify in order to avoid a Sixth Amendment Confrontation Clause violation. There, non-testifying biologists performed the DNA test, but the state presented the testimony of "the FBI team supervisor, a forensic DNA examiner who interpreted the data, formulated the conclusions, and prepared the official report." *Id.* at 853. The Florida Supreme Court emphasized the supervisor's testimony that she "*draw[s] all the interpretations and all the conclusions.*" *Id.* (emphasis in original); *see also United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) ("the Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation *of* those data may be testimonial" (emphasis in original)); *United States v. Washington*, 498 F.3d 225, 232 (4th Cir. 2007) (trial court did not err by admitting testimony of lab director who did not perform test on blood sample but rather relied on raw data generated by machines after lab technicians subjected sample to testing, and explaining that "raw data printed out by the machines are not testimonial hearsay statements"). The court distinguished *Johnson* and *Belvin*, stating that "in each of these cases, the person who prepared the report of the relevant results did not testify." *Smith*, 28 So. 3d at 854 (emphasis omitted).

In *Calloway*, 210 So. 3d at 1195, the Florida Supreme Court applied *Bullcoming*, *Williams*, and *Smith* to determine that Calloway's confrontation rights were not violated where one medical examiner ("ME") performed the autopsy, but a surrogate ME testified at trial. The *Calloway* court reasoned that the surrogate ME's testimony did not violate the Confrontation Clause where the surrogate ME was available to testify and was subject to cross-examination, the autopsy reports of the original ME were not admitted into evidence, the surrogate ME "clearly explained to the jury that his independent opinion was derived from the photographs taken by investigators at the scene and from [the original ME]'s autopsy reports," and the surrogate ME testified that he drew his own independent conclusions. *Id.*

With this precedent in mind, we turn to the facts at hand. We are compelled to reject the state's argument that Dr. Shan's testimony was sufficient to avoid a violation of the Sixth Amendment. We recognize that the evidence pertaining to Shan's "peer review" and adoption of conclusions tend to support an argument that Dr. Shan had an independent opinion. Per *Williams*, *Smith*, and *Calloway*, and assuming foundational requirements were met, it would have been permissible for Dr. Shan to testify to conclusions she reached utilizing raw data obtained in Miller's tests. But Dr. Shan's conclusions do not justify *the admission of the testimonial hearsay toxicology report authored by Miller*, which is a critical distinction between this case and *Calloway*. As in *Bullcoming*, Dr. Shan's testimony did not establish why Miller was no longer employed with the lab, and her testimony could not expose any lapses or lies on Miller's part. Thus, Miller's report was erroneously admitted.

Nevertheless, we affirm because the issue was not preserved, and Bennett does not raise fundamental error. "[F]or an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection . . . below." *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010) (quoting *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005)). "[N]o magic words are required," but "the concern articulated in the objection must be sufficiently specific to inform the court of the perceived error." *Id.* at 1109.

Despite the close relationship between the exclusion of hearsay and the right to confront witnesses, a "hearsay" objection does not preserve an argument that a Sixth Amendment confrontation right has been violated:

> The right of confrontation guaranteed by the Sixth Amendment "differs from the kind of protection that is

7

afforded by state evidence rules governing the admission of hearsay." *Lopez v. State*, 888 So. 2d 693, 697 (Fla. 1st DCA 2004). An objection specifically based on *Crawford* serves to focus the trial court's attention on the salient inquiry required by that decision, i.e., whether the evidence is "testimonial," whether the witness is "unavailable," and whether there was a "prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 124 S. Ct. 1354.

*Mencos v. State*, 909 So. 2d 349, 351 (Fla. 4th DCA 2005); *see also Perry v. State*, 927 So. 2d 228, 228 (Fla. 1st DCA 2006) ("A simple 'hearsay' objection fails to preserve the argument that one's Sixth Amendment confrontation right has been violated.").

At trial, Bennett objected on the basis of "hearsay," asserting that the report was drafted by someone "no longer with the office" who "wasn't called to testify today," and that Dr. Shan did not actually test the urine. His objection did not mention the Sixth Amendment, the Confrontation Clause, or *Crawford* or its progeny, or whether the evidence was testimonial, the witness was unavailable, or there was a prior opportunity for cross-examination.[1] Thus, Bennett failed to call the trial court's attention to the salient inquiry. If he had, the state may have been able to present its case based on Dr. Shan's analysis of the raw data and without admitting the toxicology report. But, the issue was not preserved for review, and we affirm.

*Affirmed.*

---

[1] We distinguish the instant case from *Evans v. State*, 838 So. 2d 1090, 1097 (Fla. 2002). There, the defendant raised a Sixth Amendment confrontation right argument with respect to presentence investigation reports admitted at the penalty phase of his trial, at which a sentence of death or life imprisonment would be imposed. The Florida Supreme Court rejected the state's argument that the issue was not preserved, stating, "Although Evans' counsel did not specifically assert a Sixth Amendment challenge, the hearsay objection raised is closely related to the right of confrontation." *Id.* at 1097 n.5. On the merits, the court determined that the reports were properly admitted pursuant to section 921.141(1), Florida Statutes (1999), which permitted such evidence in the penalty phase for capital felonies, "regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements," and because the defendant had a fair opportunity to rebut the reports. *Evans*, 838 So. 2d at 1097.

*Evans* was decided prior to *Crawford*, and, consequently, the salient inquiry in *Evans* did not involve the elements that are now at issue.

LEVINE and KUNTZ, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***