PER CURIAM.
Appellant Gino Browning appeals convictions for kidnapping, resisting an officer without violence, and possession of a firearm. We affirm, and write only to address defendant’s contention that the trial court erred by denying his motion for judgment of acquittal on the kidnapping count.
Recounting the facts most favorable to the state, friends Randy Holmes and Larry Holsey arranged to buy a controlled substance from defendant for $20.00 during the late evening of July 28, 2008. When they drove to his home to pick it up, defendant got in the back seat behind the driver, Holsey, who handed defendant $20.00. Defendant acted agitated, repeatedly saying, “you are trying me,” then told Holsey to give him his money, even though he had not given Holsey any narcotics. Holmes, in the passenger seat, “felt the presence” of a gun, because he heard a cocking noise, saw a “glint of light” in the back, and saw that defendant’s hands were pointed forward behind the passenger seat. He thought this might be a robbery.
Because Holsey had only a few dollars, he suggested driving to an ATM machine. On the way, they discussed withdrawing Holsey’s $200 for defendant and then taking him home, and defendant said, “if I hear anything, I’m going to come get you.” Holmes began to feel better when he heard defendant talk about going home, but said he would have preferred not to be in that car. He did not ask to be let out, because he didn’t know whether it was a robbery and was afraid to argue with defendant. When Holsey said he would go to the ATM at Publix, defendant said, “you think you’re slick, there is a lot of police up there,” and told Holsey to drive to a nearby Circle K. At the store, Holsey took the keys when he got out but defendant told him to bring them back, and again said, “you think you’re slick.”
Defendant got into the driver’s seat and turned the car on. He showed Holmes a text message on defendant’s phone that he believed was from Holsey, soliciting sex, and Holmes concluded that this was why defendant was angry. Defendant told Holmes to see what was taking Holsey so long, so Holmes got out and looked through the window and saw Holsey on his phone by the ATM machine. It occurred to him that Holsey might be calling the police, but he was confused as to whether this was a robbery or whether defendant was retaliating against Holsey because of the offensive text message. Holmes got back in the car with defendant, who had turned the car around to face the street.
Holsey testified that defendant demanded money and ordered him to do some *473 thing against his will. He felt the presence of a gun, although he never saw one, but then defendant yelled that “he was going to make me touch the gun so my fingerprints would be on it.” At the ATM, Holsey withdrew some money, but his whole objective was just to get out of the car and not get back in. He called the police, and saw Holmes through the window, but then he saw Holmes get back in the car. Holsey heard sirens and went outside but the car was gone.
Holmes said that when he began seeing police lights coming toward the convenience store, defendant sped out of the parking lot with Holmes in the car, followed by the police. Defendant had told Holmes back in the parking lot that he was high on pills, so Holmes was afraid for his life. Soon after they sped out of the Circle K, defendant threw something out the passenger window that Holmes believed was a gun. Holmes told defendant to stop, because he smelled rubber, and when defendant turned a corner and came to a brief stop, Holmes tried to get out but couldn’t. When the car slowed, Holmes threw it into park, whereupon the men were apprehended.
In Faison v. State, 426 So.2d 963 (Fla.1983), the court set forth a test for detei*-mining whether the detention of a victim during the commission of a crime also constitutes the separate crime of kidnapping. The taking, movement, or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detention.
Id. at 965. Defendant claims these facts did not satisfy any of the three prongs, because Holmes was already a passenger when the two men picked defendant up; Holmes got back into the car voluntarily at the Circle K; and when the police arrived, defendant panicked and sped off simply to avoid being arrested. Holmes’s presence in the car was merely incidental to the aggravated fleeing and eluding offense and ended naturally with the end of defendant’s flight; his presence had nothing to do with the crimes of grand theft or aggravated fleeing and eluding; and Holmes’s presence in the car did not make the high-speed chase easier to commit.
Defendant cites as most comparable the case of Brown v. State, 719 So.2d 955 (Fla. 4th DCA 1998), in which the defendant opened the victim’s car door after the victim pulled into a parking lot, told her to move to the passenger seat, then raped her and stole money and jewelry from her. He ordered her to get on the floor board while he escaped. The Fourth District reversed the kidnapping conviction, determining that the movement of the victim within the car was incidental to committing the sexual battery.
In Faison, however, the court concluded that the defendant did kidnap his victims when, rather than raping them where he found them, he dragged the first victim from her desk in front of a large window to the rear of the office and then the restroom, and he dragged his second victim from her kitchen to the bedroom. Each asportation was violent rather than slight, inconsequential, or incidental to the sexual batteries; they were not necessary to the commission of the sexual batteries; and they were both from an area where the rapes could be more easily observed to secluded locations which reduced the danger of detection.
*474 In the case at bar, forcibly keeping Holmes in the ear against his will by suddenly driving off in an attempt to escape from the police was not incidental or inherent to the crime of fleeing and eluding, in which the presence of a passenger is not a naturally occurring component; the aspor-tation was consequential and substantial because Holmes was forcibly removed from the Circle K and from the company of Holsey; and fleeing with Holmes still in the car made defendant’s flight more likely to succeed as opposed to ordering him to get out and waiting a few seconds for him to do it, which might have resulted in defendant’s immediate capture. See also Evans v. State, 838 So.2d 1090, 1096 (Fla.2002) (“Although initially all three were voluntarily in the car with Evans, there was sufficient evidence that once the shooting took place, the victims no longer willingly accompanied Evans to the various locations to which he directed he be taken and that he confined them against their will either by force or threat with the intent to terrorize them.”).
In another case, Delgado v. State, 19 So.3d 1055 (Fla. 3d DCA 2009), a mother left her child sleeping in a truck while she went inside to pick up some furniture. Two men drove off in the truck, then left it about four miles away after ransacking it. The court concluded that the defendants’ offenses included kidnapping, because even if they did not initially know the child was in the truck when they took it, they presumably saw her when they ransacked it. Although the defendants could have called the police with an anonymous tip about the child’s location, they instead abandoned the child with the truck, which gave them additional time to flee. The court concluded that the child’s confinement satisfied the Faison test as it was not slight, inconsequential, or incidental to the theft of the truck and its contents; was not inherent in the crime of theft; and had significance independent of the theft. “ ‘The message intended for the would-be wrong-doer, is that if you are going to steal or commandeer a vehicle, let the people in it go.’” Id. at 1058 (quotation omitted). The Florida Supreme Court has granted review of the Third District’s decision in Delgado v. State, 32 So.3d 622 (Fla.2010).
AFFIRMED.
PADOVANO, ROBERTS, and MARSTILLER, JJ., concur.