MARTIN, Circuit Judge,
dissenting:
I respectfully dissent. The majority opinion goes to great lengths to demonstrate that Wydell Evans is a dangerous person who committed a horrific crime. I have no quarrel with this description. I am writing in dissent, however, because federal habeas principles apply to even those among us who deserve the harshest punishment. To my mind, it is in those eases that the principles underlying the Great Writ matter most. Applying those principles, and giving the deference to the Florida Supreme Court that it is certainly due, I have concluded that Mr. Evans is entitled to federal habeas relief. Our Supreme Court has interpreted the U.S. Constitution to guarantee a prisoner facing a death sentence a real investigation into his own life, so that a jury can know any facts that might weigh against putting him to death. Mr. Evans’s jury never knew the result of any such investigation, because it had not been done at the time they heard the case. Now that an investigation has been done, the facts it turned up could have reasonably inclined the jury to sentence Mr. Evans to something other than death.
The majority has affirmed the District Court’s denial of habeas relief to Mr. Evans, reciting the fact that the Florida Supreme Court’s decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254(d). It is certainly true that AEDPA imposes a standard that is “difficult to meet” for a state prisoner seeking the writ of habeas corpus based on ineffective assistance of counsel, where that claim was denied on the merits by the state court. See Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). The majority opinion turns on the reasonableness of the Florida Supreme Court’s conclusion that “Evans had failed to prove prejudice because his postcon-viction evidence of mitigation was more harmful than helpful.” Maj. Op. at 1319; see also Evans v. State, 946 So.2d 1, 13 (Fla.2006). I have concluded to the contrary that the Florida Supreme Court’s findings in this regard constituted an unreasonable determination of the facts in light of the evidence that came to light after Mr. Evans was sentenced to death.
The majority emphasizes the bad things brought out about Mr. Evans during the state court evidentiary hearing that likely would have been told to the jury if he had presented a mental health defense. Again, I do not question that presentation of a mental health defense likely would have resulted in the jury hearing bad things about Mr. Evans, including some evidence his jury never heard. And I certainly recognize that the facts and circumstances *1339 the jury heard about Mr. Evans’s shooting of Angel Johnson, together with his despicable conduct after he shot her, were not mitigating. But I do part ways with my colleagues as to whether the Florida Supreme Court’s prejudice analysis under Strickland was reasonable and entitled to deference under AEDPA.
As I have said, I find the Florida Supreme Court’s decision rejecting Mr. Evans’s claim of ineffective assistance of counsel during the penalty phase of his trial to be based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Separately, I have also concluded that the Florida Supreme Court’s decision involved an unreasonable application of the prejudice analysis required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Once the state court unreasonably applies Strickland, or unreasonably determines the facts, its analysis is not entitled to deference under 28 U.S.C. § 2254(d). I have therefore conducted a de novo review, and concluded that Mr. Evans has demonstrated “there is a reasonable probability that, absent [counsel’s deficient performance], the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. at 2069.
I.
Like the Florida Supreme Court, the majority for this Court does not decide whether the acts and omissions of Mr. Evans’s lawyer constituted deficient performance under Strickland. Instead, this Court’s majority has affirmed the denial of habeas relief based on its conclusion that the Florida Supreme Court’s analysis that Mr. Evans was not prejudiced by his lawyer’s failure .to tell the jury about late discovered “mitigating” evidence is entitled to deference. This approach of addressing only one of the two inquiries required by Strickland for a finding that counsel was ineffective is, of course, well established habeas practice and helps conserve judicial resources. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. Strickland’s deficiency and prejudice components involve very separate and distinct inquiries. Insofar as they did not address it, I do not understand the majority opinion to have decided the Strickland deficiency component one way or the other. However, I think some description of counsel’s deficient performance is necessary to fully address the question of whether Mr. Evans was prejudiced by that performance.
For context, I begin with the undisputed proposition that our system does not allow a person to face a sentence of death without someone having looked into his background. “It is unquestioned that under the prevailing professional norms at the time of [Evans’s 1999] trial, counsel had ‘an obligation to conduct a thorough investigation of the defendant’s background.’” Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 452-53, 175 L.Ed.2d 398 (2009) (quoting Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 1515, 146 L.Ed.2d 389 (2000) (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed. 1980))). The Supreme Court has further instructed that under Strickland, “our principal concern ... is not whether counsel should have presented” mitigating evidence, but rather “whether the investigation supporting counsel’s decision not to introduce mitigating evidence of [the defendant’s] background was itself reasonable.” Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 2536, 156 L.Ed.2d 471 (2003) (emphasis omitted).
For Mr. Evans, his trial counsel did little mitigation investigation. Perhaps worse, he formulated his “strategy” to put *1340 on a penalty phase defense that Mr. Evans had good character even before what little bit of investigation he did do. Indeed, we now know from the state evidentiary hearing, held after Mr. Evans was sentenced to death, that his trial counsel understood at the time he represented Mr. Evans, that “non-statutory mitigation was” limited to good character evidence.
In preparing for his mitigation case, counsel asked few questions of Mr. Evans’s family, relying mainly on a brief, thirty-minute interview of Evans’s mother, Lilly. Even from the beginning, counsel instructed her to say only good things about her son and his background.[1] He did ask Lilly to collect character witnesses for her son’s trial, but she understood that counsel wanted only “people that could say some good things about” Mr. Evans. Counsel then sent form letters, rather than individualized inquiries, to solicit character witnesses.[2] He did not collect basic background materials that would have been easy to get, such as Mr. Evans’s school and medical records.[3] This was all in the face of ABA Guideline § 11.4.1 from 1989 — reflecting prevailing professional norms ten years before Mr. Evans’s trial— which provides that counsel’s “investigation should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.” ABA Guideline § 11.4.1(C).
Because counsel conducted no mitigation investigation beyond Mr. Evans’s good character, he never learned that Mr. Evans was hit by a car at age three, suffering a closed head injury with resulting brain damage, learning disabilities, emotional handicaps, and impulse control problems, all of which were significant enough by the time Mr. Evans was seven years old, to warrant a psychological assessment by public school authorities.
Counsel also unreasonably failed to follow up on the limited background information he did have. For example, the Florida Supreme Court noted that trial counsel “testified that the presentence investigation reports (PSI) from Evans’[s] prior convictions indicated that his mental health was perfect and that he had only seen a mental health expert when he was young.” Evans, 946 So.2d at 9 (emphasis added). While the state courts emphasized that *1341 Mr. Evans had reported “perfect” mental health in his PSI reports, it is also true that the PSIs reported that he had “seen a mental health expert when he was young.” Id. This information should have been a red flag to trial counsel, alerting him to the need to conduct a follow-up investigation. See Rompilla, 545 U.S. at 392, 125 S.Ct. at 2468-69. No competent counsel in 1999 would have failed to follow-up on information of this kind. Prompted by this red flag, competent counsel would have then obtained and reviewed school and medical records, for example. Then armed with these records, competent counsel would have investigated Mr. Evans’s mental health and consequently discovered his history of brain damage.
In sum, Mr. Evans’s trial counsel’s performance was deficient because he stopped his investigation too early, before he completed the kind of thorough investigation contemplated by Wiggins and then-prevailing professional norms. See Sears v. Upton, — U.S. -, 130 S.Ct. 3259, 3264, 177 L.Ed.2d 1025 (2010) (agreeing with state court’s determination that the “the cursory nature of counsel’s investigation into mitigation evidence — ‘limited to one day or less, talking to witnesses selected by [defendant’s] mother’ — was ‘on its face ... constitutionally inadequate’ ” (citation omitted)). Counsel’s decision to focus his investigation on Mr. Evans’s good character was not an informed decision based upon a constitutionally adequate investigation. As in Wiggins, and in breach of well-defined norms in existence at the time of Mr. Evans’s 1999 penalty phase, Mr. Evans’s trial counsel “abandoned [his] investigation of [Evans’s] background after having acquired only rudimentary knowledge of his history from a narrow set of sources.” Wiggins, 539 U.S. at 524, 123 S.Ct. at 2537. Although counsel’s decision to focus on good character evidence might be “reasonable, in the abstract, [it] does not obviate the need to analyze whether counsel’s failure to conduct an adequate mitigation investigation before arriving at this particular theory prejudiced” the defendant. Sears, 130 S.Ct. at 3265. “Whether or not [trial counsel’s] omissions were sufficiently prejudicial to have affected the outcome of sentencing, they clearly demonstrate that trial counsel did not fulfill [his] obligation to conduct a thorough investigation of the defendant’s background.” Williams, 529 U.S. at 396, 120 S.Ct. at 1514-15.
II.
I will now set out how I came to conclude that the Florida Supreme Court’s ruling on the prejudice prong of Mr. Evans’s penalty phase ineffective assistance of counsel claim involved an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d)(2). The error is plain from the Florida Supreme Court’s decision, where it stated:
Evans has failed to establish prejudice because the mitigation evidence he presented at the evidentiary hearing would likely have been more harmful than helpful. An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword. While the testimony presented at the evidentiary hearing established that Evans suffered from mental health problems, it also displayed a long history of behavioral problems and escalating violence throughout his school career. Presenting this evidence at the penalty phase would have resulted in the jury hearing about Evans’[s] aggression towards students and teachers, his aggression towards police officers, his pride in being known as a “jack-boy” because he robs drug dealers, and his habit of carrying a gun. It is just as likely that this evidence would have been more “aggravating” than mitigating.
*1342 Evans, 946 So.2d at 13 (some quotation marks omitted). This decision specifies four types of evidence that the jury would have heard if Mr. Evans had presented a mental health defense: (1) “aggression towards police officers;” (2) “pride in being known as a ‘jack-boy’” and robbing drug dealers; (3) habit of carrying a gun; and (4) “aggression towards students and teachers.” This is an unreasonable determination of the facts, because Mr. Evans’s jury already heard much of this evidence— some of it from Mr. Evans’s own mouth, when he testified at both the guilt and sentencing phases of his trial.
For example, the jury was already well aware of Mr. Evans’s “aggression towards police officers.” Certified copies of his two prior convictions for battery on law enforcement officers were introduced into evidence during the penalty phase of his trial. This was augmented by portions of the presentence investigation reports from these prior convictions, describing the battery convictions, which were also admitted into evidence during the penalty phase. Finally, Mr. Evans himself described from the witness stand his batteries against law enforcement officers, telling the jury that he kicked a police officer in his private parts in one incident, and struck an officer in the throat in another.
The penalty phase jury also knew that Mr. Evans was known to carry a gun. A certified copy of his prior felony conviction for possession a firearm was admitted into evidence during his penalty phase. Also, Mr. Evans testified before the same jury during his guilt phase, that he knew how to operate firearms. Notably, the same jury had already convicted him of first-degree murder for shooting Angel Johnson.
While the jury did not hear in precisely the same terms about Mr. Evans’s violence in school; that he robbed drug dealers; or that he prided himself on being known as “jack-boy,” the jury was well aware of his violent tendencies. The jury knew that Mr. Evans had six felony convictions, including the violent felonies for battery on a law enforcement officer discussed above, as well as aggravated battery. Mr. Evans testified to the jury that he had difficulties in his later school years, including skipping school and being suspended. Indeed, Mr. Evans told the jury that he dropped out of school in tenth grade because he was involved in crime. He described his activities as “thuddin’.” He also told them that he was already in prison by the time he should have graduated high school.
To the extent the postconviction aggravating evidence is just more of the aggravating evidence the jury already knew about Mr. Evans’s background, it is not reasonable to find Mr. Evans’s new mental health mitigation “more harmful than helpful.” The Florida Supreme Court’s determination that the postconviction mitigation evidence presented a “double-edged sword” is objectively unreasonable because it fails to recognize the fact that the jury was already well-acquainted with the aggravating edge of the sword, when the same was not true of the mitigating edge. The point of Strickland’s prejudice analysis is to reweigh all of the aggravating and mitigating evidence to see if there is a reasonable probability the jury would have returned a different sentence. Mr. Evans’s case is the mirror image of the Strickland analysis often done by our Court and the Supreme Court, in which no prejudice is found because the petitioner’s postconviction mitigation evidence is cumulative of the mitigating evidence the jury already knew about.[4] Here, the postcon- *1343 viction aggravating evidence was mostly cumulative to the evidence presented at the penalty phase but the powerful mitigating evidence was not.
Because the Florida Supreme Court’s prejudice determination rested, in part, on an unreasonable determination of the facts — that the mitigating evidence was more harmful than helpful because it would have resulted in the jury learning facts it was already generally aware of— its ruling on prejudice is not entitled to deference under AEDPA. We have explained:
When a state court’s adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them. When a state court unreasonably determines the facts relevant to a claim, we do not owe the state court’s findings deference under AEDPA, and we apply the pre-AEDPA de novo standard of review to the habeas claim.
Cooper v. Sec’y, Dep’t of Corr., 646 F.3d 1328, 1353 (11th Cir.2011) (quotation marks and alteration omitted). Thus it is our obligation to determine de novo whether Mr. Evans was prejudiced by the failure of his counsel to present the mitigating evidence which has since come to light.[5]
III.
There is another reason why the Florida Supreme Court’s ruling on Mr. Evans’s penalty phase ineffective assistance of counsel claim is not entitled to deference under AEDPA. I believe that the Florida Supreme Court unreasonably applied Strickland’s prejudice standard. See 28 *1344 U.S.C. § 2254(d)(1). This is because that Court’s prejudice analysis suffers from the same infirmity the U.S. Supreme Court identified and repudiated in Porter v. McCollum, 130 S.Ct. 447.
In Porter v. McCollum, the U.S. Supreme Court found the Florida Supreme Court’s analysis of a capital habeas petitioner’s penalty phase Strickland, claim to be “an unreasonable application of our clearly established [federal] law.” 130 5.Ct. at 455. The U.S. Supreme Court reversed the ruling in Porter v. State, 788 So.2d 917, where the Florida Supreme Court affirmed the trial judge’s ruling in which he gave greater weight to the expert who testified for the State of Florida than the expert presented by Mr. Porter. Stating that the trial court had “resolved the conflict of the expert opinion” and “concluded that [Porter] failed to demonstrate the existence of the alleged mitigation,” the Florida Supreme Court affirmed the state trial court’s conclusion that there was no prejudice under Strickland. Id. at 923-24 (citing Stephens v. State, 748 So.2d 1028, 1034 (Fla.2000)).[6]
In Porter v. McCollum, the United States Supreme Court rejected this analysis as an unreasonable application of Strickland:
The Florida Supreme Court’s decision that Porter was not prejudiced by his counsel’s failure to conduct a thorough— or even cursory — investigation is unreasonable. The Florida Supreme Court either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing. Under Florida law, mental health evidence that does not rise to the level of establishing a statutory mitigating circumstance may nonetheless be considered by the sentencing judge and jury as mitigating. See, e.g., Hoskins v. State, 965 So.2d 1, 17-18 (Fla.2007) (per curiam). Indeed, the Constitution requires that “the sentencer in capital cases must be permitted to consider any relevant mitigating factor.” Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Yet neither the postconviction trial court nor the Florida Supreme Court gave any consideration for the purpose-of nonstatutory mitigation to Dr. Dee’s testimony regarding the existence of a brain abnormality and cognitive defects. While the State’s experts identified perceived problems with the tests that Dr. Dee used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.
Porter v. McCollum, 130 S.Ct. at 454-55 (footnote omitted).
One way to characterize the problem in Mr. Evans’s case is to say that the Florida Supreme Court analyzed Evans’s Strickland claim the same way it did Mr. Porter’s. Compare Evans v. State, 946 So.2d *1345 at 12, with Porter v. State, 788 So.2d at 923. Immediately after the Florida Supreme Court correctly identified Strickland as the governing standard for reviewing ineffective assistance of counsel claims in Mr. Evans’s case, it stated:
We defer to the trial court’s findings of fact regarding the credibility of witnesses and the weight assigned to the evidence but review the deficiency and prejudice prongs de novo. Windom v. State, 886 So.2d 915, 921 (Fla.2004) (citing Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999)).
Evans, 946 So.2d at 10. That the Florida Supreme Court expressly relied on Stephens in Mr. Evans’s case signaled that it considered itself bound, based on its own precedent interpreting Strickland, to defer to the state postconviction trial court’s findings on the existence of mitigation, including its resolution of conflicts in the evidence between the experts.
In Evans v. State, like in Porter v. State, the state habeas court discounted the opinions of Mr. Evans’s two mental health experts about the existence and significance of mental health mitigation in his ease. The state trial court’s order denying postconviction relief acknowledged that both of Mr. Evans’s experts agreed that, at the time of the offense, Evans met the criteria for Florida’s statutory mental state mitigators,[7] in part due to his brain damage. See also Evans v. State, 946 So.2d at 8. The state trial court also noted that the state’s expert reached the opposite conclusion: Evans did not satisfy Florida’s statutory mental health mitigators. See also id. at 8-9. The state trial court then went on to resolve the conflict between the experts’ testimony as follows:
The Court finds that [trial counsel] was not ineffective for failing to retain an expert witness to present evidence of brain damage suffered by Mr. Evans, in support of mitigation that Mr. Evans was under the influence of extreme mental or emotional disturbance at the time of the offense. Based on the testimony of [the state’s expert], the Court finds that any brain damage suffered by [Mr. Evans] was minimal and did not support a conclusion he had an impulse control disorder. The Court also finds that defense counsel was not ineffective for failing to investigate and present evidence in support of statutory mitigation that Mr. Evans[’s] capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired at the time of the offense. The defense experts’ conclusions concerning [Mr. Evans’s] mental state were completely rebutted by the State’s expert.
Doc. 17, Exh. G-3 at 29. Indeed, the state trial court’s order left little doubt that it completely discounted Mr. Evans’s evidence of brain damage:
The Court finds more credence in the testimony of [the state’s expert] than in the testimony of the defense doctors presented. Although all the doctors agree that he had some type of brain injury, the Court finds the defense has not established a sufficient ‘link’ between [Mr. Evans’s] behavior and his actions the night of the murder, such that it could be considered a mitigator.[8]
*1346 Id. at 13 (footnote added). These critical findings of fact about the non-existence of statutory and nonstatutory mitigation rendered the state court’s prejudice analysis unreasonable because, just the same as in Porter v. State, the state trial courts “either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing.” Porter v. McCollum, 130 S.Ct. at 454.
We have been instructed that in order to make the prejudice determination required by Strickland, a reviewing court must “consider the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding — and reweigh it against the evidence in aggravation.” Id. at 453-54 (quotation marks and alteration omitted). Where, as in Mr. Evans’s case, the state courts unreasonably discount a capital defendant’s mitigation, the state court fails to consider the “totality of the available mitigation evidence” as required by Strickland.
In light of the majority’s opinion that nothing in Porter v. McCollum compels the conclusion I have reached in this case, there are a few points about my understanding of that case that bear emphasis. First, I do not read Porter v. McCol-lum’s “did not consider or unreasonably discounted” language to impose a requirement on state courts that they must mention or address all of the mitigation presented in order to properly conduct Strickland’s prejudice analysis. This much should be plain from the holding in Porter v. McCollum and even a cursory examination of the Florida Supreme Court’s opinion in Porter v. State, 788 So.2d at 921-25.[9] It is well settled that state court adjudications are entitled to AEDPA deference even if they are unaccompanied by opinions. See Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011) (“Section 2254(d) applies even where there has been a summary denial.”).
Second, I do not read Porter v. McCol-lum as authorizing federal courts to review state court opinions as if we were grading papers. In fact, speaking of the role of the federal courts in those terms overlooks our solemn obligation and duty under AEDPA to consider whether the state court’s adjudication of a prisoner’s habeas action is contrary to, or an unreasonable application of, clearly established Supreme Court precedent or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Having said that, I fully recognize that Porter v. McCollum did nothing to undo, or recede from, the wide latitude and deference owed state court adjudications on the merits under AEDPA. But when evaluating a state habeas prisoner’s petition, “a habeas court must determine what arguments or theories supported or, if none were stated, could have supported the state court’s decision; and then it must ask whether it is possible that fairminded *1347 jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.” Reese v. Sec’y, Fla. Dep’t of Corr., 675 F.Sd 1277, 1286 (11th Cir.2012) (quoting Harrington, 131 S.Ct. at 786) (alterations omitted). So where, as here in Mr. Evans’s case, the state court goes to the trouble of supporting its ruling with a written opinion, it is proper that federal courts carefully consider the analysis provided. Certainly, the same principles of comity and federalism that animate our deference to state courts, dictate that when we examine a state court’s stated reasons, we accept that the state court says what it means and means what it says in its opinions. That being the case, when the Florida Supreme Court said it was going to rely on Stephens to evaluate Mr. Evans’s Strickland claim, I accept that it did.
Third, I do not read Porter v. McCollum as announcing a new rule of law or in any way modifying Strickland’s prejudice standard. At the same time, Porter v. McCol-lum is more than just an application of Strickland to a single set of facts. Rather, Porter v. McCollum also teaches federal courts how to properly apply the “unreasonable application” prong of AEDPA. After all, we must be mindful that the United States Supreme Court not only held that the Florida Supreme Court unreasonably applied clearly established federal law, but it also reversed this Court’s judgment in Porter v. Attorney General, 552 F.3d 1260, 1274 (11th Cir.2008), that the Florida Supreme Court’s opinion in Porter v. State, 788 So.2d 917, was entitled to deference under AEDPA. See Porter v. McCollum, 130 S.Ct. at 456.
Finally, Porter v. McCollum makes clear that an evaluation of the mitigating evidence presented to establish prejudice under the prejudice prong of the Strickland standard must be evaluated from the perspective of the sentencing jury. The issue is not what impact the evidence of prejudice had on the judge presiding at a collateral evidentiary hearing, but what impact that evidence may have had on the jury who heard the case if it had been presented. See Porter v. McCollum, 130 S.Ct. at 454-55.
For each of these reasons, I have concluded the state court’s adjudication of Mr. Evans’s penalty phase ineffective assistance of counsel claim is not entitled to deference under 28 U.S.C. § 2254(d)(1) and (2).
IV.
Under de novo review, I conclude that Mr. Evans has satisfied Strickland’s demanding standard for finding both that his counsel was deficient and that Mr. Evans was prejudiced by that deficiency. Based on the facts set out above, I have no doubt that his trial counsel’s investigation of Mr. Evans’s life history was constitutionally deficient. The result was that Mr. Evans’s jury never heard about his closedhead injury at age three, resulting brain damage, learning disabilities, and impulse control problems. I understand this to be precisely the kind of troubled history the U.S. Supreme Court has “declared relevant to assessing a defendant’s moral culpability.” Porter v. McCollum, 130 S.Ct. at 454 (citing Wiggins, 539 U.S. at 513, 123 S.Ct. at 2531).
When I reweigh all of the mitigating and aggravating evidence, both from the trial and the state postconviction proceeding, I conclude that “there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. at 2069. On the aggravating side of the ledger, the penalty phase jury heard a lot of evidence about why a death penalty should be im *1348 posed on Mr. Evans. Much of the new aggravating evidence introduced at the postconviction hearing was cumulative of the evidence the jury had already heard, and would not have significantly altered the weight on the aggravating side of the scale.[10]
On the mitigating side of the ledger, the sentencing jury was given little if any evidence to support a decision not to impose the death penalty. I am aware that the jury was presented with, and the trial court found, nonstatutory mitigating evidence that portrayed Mr. Evans’s in a positive light. See Evans v. State, 838 So.2d 1090, 1097 (Fla.2002). But Mr. Evans’s counsel gave the jury no basis for understanding how someone of purported “good character” could have gone so tragically off course as to shoot and kill Angel Johnson. This, when there was powerful and constitutionally relevant evidence that existed in the case. I understand the Supreme Court to have taught us that juries should know about this kind of information so that they can make individualized sentencing determinations. As they have said, “[a] process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind.” Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).
For me, it cannot be correct that Mr. Evans’s childhood head injury and the devastating effects it had on his life were entitled to no weight, simply because introduction of those facts would have also resulted in the jury hearing more bad facts about him. This is particularly true when those bad facts are so similar in kind to the negative evidence the jury had already heard. The explanation of why an individual committed a horrific crime and other bad acts which may aggravate the crime is what the Eighth Amendment jurisprudence labels as mitigating. I cannot ig *1349 nore the reasonable probability that a jury would have returned with a different sentence had they learned about how Mr. Evans succumbed to the frailties inherent in his own life. I would therefore grant him habeas relief.

. The American Bar Association (ABA) guideline that existed at the time advised counsel to "explore the existence of other potential sources of information relating to the offense, the client’s mental state, and the presence or absence of any aggravating factors under the applicable death penally statute and any mitigating factors.” Id. § 11.4.1(D)(2)(B).

. The form letter was as follows:
Dear [X]:
Your name and address was provided to me by Lilly Evans, as a possible character witness for her son, Wydell Jody Evans, with regard to charges of First Degree Murder.
Would you please indicate, in your own words, the following:
1. How long you have known Wydell Jody Evans;
2. How to [sic] you know Wydell Jody Evans — as a
a. friend;
b. family member;
c. co-worker;
d. employee;
f. employer.
3.In one or two sentences please indicate what you think of Wydell Jody Evans as a person and whether or not you feel he committed the crime for which he has been charged.

.No competent counsel in 1999 would have failed to collect and review this type of information especially where, as here, the defendant was a lifelong resident of the county where the trial was held. See ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989), cited in Wiggins, 539 U.S. at 524, 123 S.Ct. at 2536-37.

. See, e.g., Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1409, 179 L.Ed.2d 557 (2011) (finding no reasonable probability that the additional evidence presented in state habeas *1343 proceeding would have changed jury's verdict because the " 'new' evidence largely duplicated the mitigation evidence at trial”); Wong v. Belmontes, 558 U.S. 15, 130 S.Ct. 383, 387, 175 L.Ed.2d 328 (2009) (finding no prejudice in part where ”[s]ome of the evidence was merely cumulative of the humanizing evidence ... actually presented [at trial]; adding it to what was already there would have made little difference”); Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1271 (11th Cir.2012) ("The cumulative nature of [the mitigating] evidence weakens its usefulness to [the capital habeas petitioner] on the prejudice inquiry.”); Sochorv. Sec'y, Dep't of Corr., 685 F.3d 1016, 1031 (11th Cir.2012) (finding no prejudice in part because "[m]ost of the nonstatutory mitigating evidence that [petitioner] produced in the evidentiary hearing was cumulative of evidence produced at the guilt and penalty phases of the trial”); Rose v. McNeil, 634 F.3d 1224, 1243 (11th Cir.2011) ("[A] petitioner cannot satisfy the prejudice prong of the Strickland test with evidence that is merely cumulative of evidence already presented at trial”); Boyd v. Allen, 592 F.3d 1274, 1298 (11th Cir.2010) (holding no prejudice in part because "much (although not all) of the ‘new’ testimony introduced at the post-conviction hearing would simply have amplified the themes already raised at trial”); Robinson v. Moore, 300 F.3d 1320, 1347 (11th Cir.2002) (holding no prejudice where "most of the new mitigation evidence [was] cumulative of the nonstatutory mitigating circumstances presented during resentencing”); id. ("While the additional mitigation witnesses procured by Robinson’s 3.850 counsel could have presented the resentencing jury and trial judge with more details, or different examples, of these aspects of Robinson’s life, these aspects of his life were nonetheless known to the resentencing jury and trial judge.”); Glock v. Moore, 195 F.3d 625, 636 (11th Cir.1999) (concluding that capital petitioner could not show prejudice because "much of the new evidence that [petitioner] presents is merely ... cumulative to that which was presented at trial”).

. The state trial court’s conclusion that trial counsel made a strategic decision to present only good character evidence, despite counsel’s lack of investigation, is the same kind of "post hoc rationalization” rejected in Wiggins. Wiggins, 539 U.S. at 526-27, 123 S.Ct. at 2538.

. In Stephens v. State, 748 So.2d 1028, the Florida Supreme Court resolved an inconsistency in its jurisprudence about the standard for reviewing Strickland claims in collateral proceedings. Stephens held that under Strickland, both the performance and prejudice prongs are mixed questions of law and fact, with deference on appeal given only to the lower court’s factual findings. Id. at 1033. But Stephens made clear that even under this test, ”[w]e recognize and honor the trial court’s superior vantage point in assessing the credibility of witnesses and in making findings of fact. The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review.” Id. at 1034. In Porter v. State, the Florida Supreme Court relied on this very language from Stephens as requiring it to discount and discard the testimony of Mr. Porter's mental health expert's opinion which had been presented by Mr. Porter at his state court evidentiary hearing. See Porter v. State, 788 So.2d at 923-24.

. See Fla. Stat. §§ 921.141(6)(b) ("The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.”), and (6)(f) ("The capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired.”).

. The state trial court’s requirement of a "nexus” between the mitigating evidence and the crime is also troubling because the U.S. Supreme Court has squarely rejected such a narrow definition of mitigation. See Tennard v. Dretke, 542 U.S. 274, 285-87, 124 S.Ct. 2562, 2570-72, 159 L.Ed.2d 384 (2004) (stating that “impaired intellectual functioning is inherently mitigating” and that defendant *1346 need not establish nexus between mental capacity and crime for evidence to be relevant to mitigation); see also Hodge v. Kentucky, - U.S. -, 133 S.Ct. 506, 506, 184 L.Ed.2d 514 (2012) (Sotomayor, J., dissenting from denial of certiorari) ("Mitigation evidence need not, and rarely could, ‘explai[n]' a heinous crime; rather, mitigation evidence allows a jury to make a reasoned moral decision whether the individual defendant deserves to be executed, or to be shown mercy instead.").

. Said another way, the error recognized in Porter v. McCollum cannot be merely that the Florida Supreme Court failed to address or discuss the new mitigating evidence in its opinion. Even a cursory examination of the Florida Supreme Court’s opinion in Porter v. State reveals that that court explicitly addressed Porter’s new mitigating evidence by reviewing the evidence adduced at the state court evidentiary hearing at length. See 788 So.2d at 921-25.

. For several reasons, I think the majority gives too much weight to the supposed negative impact it imagines Mr. Evans's jury would have placed on expert opinion from the state postconviction hearing that Mr. Evans suffers from antisocial personality disorder (ASPD). First, under Florida law, ASPD is considered a "valid mitigating circumstance for trial courts to consider and weigh.” Morton v. State, 789 So.2d 324, 329-30 (Fla. 2001); see also Morton v. Sec’y, Fla. Dep't of Corr., 684 F.3d 1157, 1168 (11th Cir.2012) ("[Tjhere cannot be a per se rule that a lawyer renders ineffective assistance by presenting evidence of antisocial personality disorder for purposes of mitigation.”). Second, to the extent an ASPD diagnosis in Mr. Evans’s case might have been aggravating, rather than mitigating, any adverse impact of this labeling would have been merely cumulative to the various incidents of violence and antisocial tendencies the jury already knew about. The jury did not need an expert to tell them that Mr. Evans had ASPD to evaluate his moral culpability based on the totality of the evidence known to them. Cf. Belmontes, 130 S.Ct. at 388 (rejecting notion that mitigating evidence would have carried "greater weight” if it had been submitted with expert testimony because, where the evidence was not complex, the jury "could use its common sense” to understand its significance). Further, assuming the jury had been told Mr. Evans suffers from ASPD, we must also consider that reasonably competent counsel could have mitigated the impact of such a diagnosis by focusing on those troubled aspects of Mr. Evans’s background which led to the development of the disorder. In any event, we know that a diagnosis of ASPD does not preclude a finding of Strickland prejudice where counsel otherwise fails to investigate and present powerful mental health mitigating evidence. For example, the Supreme Court granted penalty phase relief in Porter v. McCollum even though the state's expert opined that Mr. Porter had met most of the diagnostic criteria for ASPD. See Porter v. Crosby, No. 6-03-cv-1465-CM-31KRS, 2007 WL 1747316, *28 (M.D.Fla. June 18, 2007).